IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 11, 2001

## THOMAS T. CUMMINGS v. STATE OF TENNESSEE

**Appeal as of Right from the Criminal Court for Shelby County**
**No. P-22250     James C. Beasley, Sr., Judge**

_____

**No. W2000-02813-CCA-R3-PC - Filed November 9, 2001**

_____

The petitioner, Thomas T. Cummings, pled guilty in the Shelby County Criminal Court to second degree murder.  Pursuant to a negotiated plea agreement, he was sentenced as a violent offender to twenty-five years incarceration, to be served at one hundred percent (100%), in the Tennessee Department of Correction.  The petitioner timely filed for post-conviction relief, alleging that he received ineffective assistance of counsel and that his plea was not knowing and voluntary because his attorney erroneously advised him that he would be required to serve only eighty-five percent (85%) of his sentence before becoming eligible for parole and that his sentence could be reduced an additional fifteen percent (15%) for "good behavior." On appeal, the petitioner challenges the post-conviction court's conclusion that he received effective assistance of counsel.  After a review of the record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

Alicia A. Howard, Memphis, Tennessee, for the appellant, Thomas T. Cummings.

Paul G. Summers, Attorney General and Reporter; Laura McMullen Ford, Assistant Attorney General; John W. Pierotti, District Attorney General; and Dan Woody, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

### I.  Factual Background

On December 2, 1998, the petitioner was indicted on a charge of first degree murder following the shooting death of a deputy jailer in Shelby County.  The victim was shot in the front yard of his home as the result of an alleged "hit" placed on him by a street gang known as the Traveling Vice Lords.  The petitioner made several statements to law enforcement authorities outlining his involvement in the offense. Three of the petitioner's co-defendants were convicted by

a jury of first degree murder and sentenced to life imprisonment without the possibility of parole. A fourth co-defendant pled guilty to a lesser offense and received a fifteen-year sentence. The petitioner ultimately pled guilty to second degree murder and was sentenced to serve one hundred percent (100%) of his twenty-five year sentence in confinement.

The evidence presented at the post-conviction hearing consisted of the testimony of the petitioner and his trial counsel. The petitioner testified that he would not have pled guilty if he had understood the terms of the plea agreement. He insists that his attorney advised him that he would be eligible for parole after serving eighty-five percent (85%) of his sentence and that his sentence could be reduced an additional fifteen percent (15%) for "good days." However, he discovered after his incarceration that he was not eligible for parole and that he would not be eligible for sentence reduction credits until after he had served eighty-five percent (85%) of his sentence. The petitioner acknowledged that the trial court advised him at the guilty plea hearing "that I would get credit for good behavior, but he said that it's going to be at one[]hundred percent and that I would not get parole." He also conceded that he understood what the trial judge told him regarding his sentence. Moreover, the petitioner testified that his trial counsel read the plea documents to him "front and back" before he signed them.

The petitioner admitted that he never told the trial court or his attorney that he did not understand the terms of his plea agreement. However, he contends that the proceedings were moving so quickly that he did not have the opportunity to express his concerns. Additionally, the petitioner alleges that he was pressured to plead guilty because his attorney and the trial court advised him that the plea offer was only available that day. He admitted that, at the time of his guilty plea hearing, his trial date had not been set and he knew that his attorney had time to investigate and develop his case.

As further support for his claim of ineffective assistance, the petitioner alleges that his trial counsel should have scheduled a psychological evaluation for him. The petitioner testified that he is unable to read or write and that he did not attend school regularly after the seventh or eighth grade. He contends that a psychological evaluation would have provided sufficient evidence to suppress his confession. However, the petitioner also admitted that he was aware that the three co-defendants who had gone to trial had received a sentence of life without the possibility of parole. He was concerned that he would receive a life sentence and, at the time, believed that the plea was in his best interest. He thought that the plea was his only chance of ever getting out of the penitentiary.

In response to the petitioner's testimony, the State offered the testimony of petitioner's trial counsel. Counsel testified that he had practiced law for eight years and that approximately eighty or ninety percent (80 or 90%) of his practice was in the area of criminal law. He was also certified to handle capital cases. Counsel testified that he was aware that the petitioner is illiterate; therefore, he very carefully explained the plea documents to the petitioner. He emphasized that he read all of the documents to the petitioner "line by line" and specifically explained to the petitioner that he would have to serve eighty-five percent (85%) of his sentence

before he would be eligible for "good credit time." Counsel explained to the petitioner that he did not have to accept the proposed plea agreement and reminded him that they would have time to prepare for trial. Counsel recalled that the trial court had advised him that he would be given all the time necessary to prepare for trial. Counsel also remembered that the petitioner had several days to consider the agreement and discuss it with his family.

Counsel admitted that he erroneously advised the petitioner that he would be eligible for parole after serving eighty-five percent (85%) of his sentence. Counsel observed that, at the guilty plea hearing, the trial court corrected counsel's error and explained to the petitioner before his plea was entered that the petitioner would never be eligible for parole and would be required to serve one hundred percent (100%) of his sentence in confinement. Counsel stated that the petitioner did not appear surprised by the trial court's comments because "everybody kept reiterating that it was at a hundred percent." He said that the petitioner was repeatedly told that he would never be released prior to serving eighty-five percent (85%) of his sentence.

Counsel testified that, when he became aware of petitioner's illiteracy, he asked that the petitioner be evaluated. The trial court approved funds for the evaluation, and a psychologist was retained; however, the petitioner had not been evaluated at the time he pled guilty. Counsel explained that, even if the petitioner's statements had been suppressed, the State had witnesses who could place the petitioner at the scene of the murder with a gun in his hand. Counsel believed that the plea was in the petitioner's best interest. He stated that the petitioner was aware that three of his co-defendants had been convicted by a jury and sentenced to life imprisonment without the possibility of parole. Petitioner thought that accepting the proposed plea would be the only chance he had to ever get out of the penitentiary.

Following the post-conviction hearing, the post-conviction court made detailed findings of fact and conclusions of law, concluding that the petitioner had failed to establish by clear and convincing proof that he had been denied effective assistance of counsel or that his guilty plea was not knowingly and voluntarily entered.

## II. Analysis

The sole issue on appeal is whether the post-conviction court erred in finding that the petitioner received effective assistance of counsel. In post-conviction proceedings, the petitioner has the burden of proving the grounds raised in the petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f) (1997). A post-conviction court's factual findings are subject to a de novo review by this court; however, we must accord these factual findings a presumption of correctness that may be overcome only if the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). A post-conviction court's conclusions of law, such as whether counsel's performance was deficient or whether that deficiency was prejudicial, are subject to a purely de novo review by this court, with no presumption of correctness. Fields, 40 S.W.3d at 458.

In order to prove ineffective assistance of counsel, the petitioner bears the burden of showing both that his counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the case. See Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). This is a two-pronged test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland, 466 U.S. at 687, 104 S. Ct. at 2064. Moreover, when a petitioner's ineffective assistance claim is made in the context of a conviction stemming from a guilty plea, he must prove a reasonable probability that, were it not for deficiencies in his counsel's performance, he would not have pled guilty but instead would have insisted on going to trial. See Shazel v. State, 966 S.W.2d 414, 416 (Tenn. 1998) (quoting Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370-71 (1985)).

The deficiency prong of the test is satisfied by showing that counsel's actions or decisions "f[e]ll below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065, and Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a "reasonable probability" that the outcome of the proceeding would have been different had it not been for counsel's deficiencies in performance. Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. When analyzing a petitioner's allegations of ineffective assistance of counsel, this court must indulge a strong presumption that the conduct of counsel fell within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, 104 S. Ct. at 2066, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

The post-conviction court concluded in its detailed findings of fact and conclusions of law that the petitioner failed to establish by clear and convincing proof that his counsel was ineffective or that he had suffered prejudice as a result of ineffective assistance of counsel. The court noted that the petitioner's testimony at the post-conviction hearing differed little from that of his trial counsel. The primary difference related to the claim that petitioner did not understand that he would be required to serve eighty-five percent (85%) of his sentence before he became eligible for sentence reduction credits. The record reflects that petitioner's counsel advised the trial court that petitioner was illiterate and that counsel had carefully reviewed the plea documents with the petitioner. Although the post-conviction court noted that trial counsel had incorrectly advised petitioner that he would be eligible for parole after serving eighty-five percent (85%) of his sentence, the post-conviction court concluded that the trial court thoroughly advised the petitioner regarding the requirements of his sentence. The post-conviction court further noted the following colloquy between the trial court and the petitioner:

-4-

The Court: All right, now, there is no parole for Murder, there is no parole for Murder in the Second Degree or First Degree and the Parole Board will never meet to discuss your case, they'll never consider your case. The law says, though, that after you've served eighty-five [percent] of this sentence, they can consider you, the Department of Correction, not the Parole Board, can consider you, for giving you credits for being, good behavior and good time, so that you may not have to serve the entire twenty-five years if you are on good behavior then you will get credits. But, they may decide not to give you any credit at all and you will have to do the twenty-five years day for day. Do you understand that?

Petitioner: Yes, sir.

The petitioner acknowledged, and the transcript of the guilty plea hearing reflects, that petitioner was informed several times by the trial court that he would never be eligible for parole and would be required to serve one hundred percent (100%) of the sentence in confinement. Each time, the petitioner responded that he understood. In summary, the evidence at the post-conviction hearing supports the findings and conclusions reached by the post-conviction court.

### III. Conclusion

After a careful review of the record, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE